THOMPSON and wife, Appellants, v. BEECHAM and another, Respondents.

*No. 760 (1974). Argued April 7, 1976.—Decided May 4, 1976.*
(Also reported in 241 N. W. 2d 163.)

For the appellants there was a brief and oral argument by *Robert E. Sutton* of Milwaukee.

For the respondents there was a brief by *Eisenberg & Kletzke* and oral argument by *Jerome F. Pogodzinski,* all of Milwaukee.

WILKIE, C. J. In 1971 the plaintiffs George and Elizabeth Thompson filed a lawsuit against H. Matthew Beecham, the minister of the church to which they belonged, and De Witt C. Walker, chairman of the church board of trustees. After a trial to a jury, the trial court directed a verdict against the plaintiffs on their claim of malicious prosecution and on their claim against Walker for abuse of process. After the jury returned a verdict for the plaintiffs on their abuse of process claim against Beecham, the trial court set that verdict aside and ordered judgment for Beecham. We affirm.

George and Elizabeth Thompson were long-time, active members of the Canaan Missionary Baptist Church in Milwaukee. Beecham became minister of that church in 1956.

In 1969 a feud erupted between the Thompsons and Beecham. Mrs. Thompson had received phone calls regarding alleged misconduct by Beecham, and had spoken with various church members concerning these charges. She later made a veiled reference to these charges before the congregation as she was being reinstated in the church, after having left it and attended another church. At about this same time, Mrs. Thompson was discharged as Sunday school teacher. In April 1969, Mr. Thompson, in his capacity as church treasurer, gave testimony in Beecham's divorce proceedings concerning payments by the church to Beecham. In May 1969, a group calling itself the church board of trustees (of which Walker was chairman) informed the Thompsons that they had forfeited their membership in the church. In June 1969, the locks on the church doors were changed, and a group calling itself the board of deacons informed Beecham

that he was relieved of his responsibilities as pastor. During this time Mr. Thompson, assisted by Mrs. Thompson, attempted, at the end of services, to read aloud to the congregation testimony from the record of Beecham's divorce proceeding. They were unsuccessful in these attempts, but Mrs. Thompson later read the transcript to some of the church members at a nearby building.

On July 15, 1969, at the instance of Beecham and Walker, the church began a civil action against the Thompsons, seeking an injunction to restrain them from interfering with church services and activities. The Thompsons counterclaimed against the church and also brought Beecham into the action as a third-party defendant. They sought to dissolve the church, and to remove Beecham from his position.

More than two years later, on August 27, 1971, the parties made a stipulation in open court which amounted to a compromise and settlement of their dispute. The agreement provided as follows:

"Now, the parties hereby stipulate to the following facts: 1. That the defendants, George B. Thompson and Elizabeth Thompson, his wife, have never been expelled from the membership of the Canaan Missionary Baptist Church, located in Milwaukee, Wisconsin.

"2. That the defendants have been members since 1942 of the Canaan Missionary Baptist Church in good standing, and that the defendants are currently and presently members in good standing of the church.

"Based upon the following factual stipulation, to which both Rev. Beecham, as the plaintiff in the one case and the third-party defendant in the other case, consents and as George B. Thompson and Elizabeth Thompson, his wife, as the defendants in the one case and the third-party plaintiffs in the second case, also consent, the parties, by their attorneys, will move the court: 1. To enter judgment for the defendants in the initial action without costs and disbursements upon the complaint and answer; and

"2. To enter judgment to the third-party defendant, Rev. Beecham, upon the third-party complaint and answer without costs and disbursements.

"The intention being as to both actions that there be no costs and disbursements granted to either side."

Both the Thompsons and Beecham took the stand to testify that they agreed with this settlement and were voluntarily assenting to it.

Near the end of 1971, however, the Thompsons began the instant action against Beecham and Walker, alleging that their actions in the prior suit constituted malicious prosecution and abuse of process.

Two issues are presented:

1. Was the stipulation between the parties a compromise and settlement of the prior action, so that there was no termination of this prior action favorable to the plaintiffs and thus no basis for an action for malicious prosecution?

2. Was there sufficient evidence to raise a jury question of a willful act or threat by defendants not authorized by the process, or aimed at an objective other than that of the proceeding itself?

I. *Malicious prosecution.*

A necessary element of a cause of action for malicious prosecution is that the former proceedings must have terminated in favor of the defendant therein, the plaintiff in the action for malicious prosecution.[1] A voluntary compromise and settlement of the prior suit is not a favorable termination, and in such circumstances a suit for malicious prosecution cannot be maintained.[2]

---

[1] *Maniaci v. Marquette University* (1971), 50 Wis. 2d 287, 298, 184 N. W. 2d 168; *Elmer v. Chicago & N. W. R. Co.* (1950), 257 Wis. 228, 231, 43 N. W. 2d 244.

[2] *Lechner v. Ebenreiter* (1940), 235 Wis. 244, 252, 292 N. W. 913.

The trial court specifically found that the oral stipulation in open court was a voluntary compromise and settlement of the prior suit. We agree. The prior proceedings began as a suit by the church, at the instance of Beecham and Walker, to restrain the Thompsons from interfering with church services. The Thompsons chose to enlarge the scope of these proceedings by means of a third-party action against Beecham, in which they sought to dissolve the church, and have Beecham removed. These enlarged proceedings were terminated when the church, through Beecham and Walker, agreed that the Thompsons were and always had been members in good standing, and the Thompsons agreed to give up their attempt to dissolve the church and remove Beecham. Each party gave up a claim, and each party received a benefit. No trial on the merits was ever had. The prior proceedings were terminated by a voluntary compromise and settlement, and not by a disposition favorable to the plaintiffs.

The Thompsons argue that the prior proceedings were terminated favorably to them because judgment was entered for them in the church's initial injunction suit. The trial court correctly concluded that this judgment must be viewed in context, as merely the formal means of securing the Thompsons' settlement benefits, just as the judgment for Beecham was the formal means of securing his settlement benefits. The fact remains that the prior proceedings, as enlarged by the Thompsons themselves, did not terminate entirely favorably to the Thompsons, but rather ended with a compromise and settlement in which neither party could claim that they had prevailed.

II. *Abuse of process.*

A termination favorable to the Thompsons is not a necessary element of a cause of action in abuse of process.

Indeed, as this court pointed out in *Maniaci*,[3] abuse of process may even lie when the prior plaintiff has met with success in the former action.

The fatal lack in plaintiffs' claim against Beecham for abuse of process, as the trial court found, is the absence of evidence to support a finding of fact of a willful act done by Beecham in the use of process which was not proper in the conduct of the process.

We have adopted the definition of abuse of process set forth in Restatement of Torts, as follows:

"One who uses a legal process, whether criminal or civil, against another to accomplish a purpose for which it is not designed is liable to the other for the pecuniary loss caused thereby."[4]

The comments to this section of the Restatement make it clear that the elements of the tort are a purpose other than that which the process was designed to accomplish and a subsequent misuse of the process, even though the process was properly instituted.[5] Prosser explains these elements as follows:

"The essential elements of abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself,

---

[3] *Supra,* footnote 1, at page 299.

[4] Restatement, 3 *Torts,* p. 464, sec. 682. *See: Neu's Supply Line v. Department of Revenue* (1971), 52 Wis. 2d 386, 393, 190 N. W. 2d 213; *Maniaci v. Marquette University, supra,* footnote 1, at page 299.

[5] *See: Moffett v. Commerce Trust Co.* (Mo. 1955), 283 S. W. 2d 591, 599, for a discussion of the Restatement elements of the tort.

. . . The ulterior motive or purpose may be inferred from what is said or done about the process, but the improper act may not be inferred from the motive. . . ."[6]

The second of these elements, the "definite act or threat not authorized by the process," is not present here. In *Novick v. Becker*[7] this court specifically recognized the necessity of this element. In that case the court granted a demurrer because the plaintiffs had not alleged that the defendants had taken "irregular steps" under the cover of the process after its issuance. Other cases have uniformly required that this element be alleged and proved. In order to maintain an action for abuse of process, the process must be used for something more than a proper use with a bad motive. The plaintiff must allege and prove that something was done under the process which was not warranted by its terms. The existence of an improper purpose alone is not enough, for this improper purpose must also culminate in an actual misuse of the process to obtain some ulterior advantage.[8]

The trial court granted Walker and Beecham a directed verdict on the Thompsons' cause of action for abuse of process. Walker was properly granted a directed verdict without the submission of the matter to the jury. There was a nearly complete failure of proof in regard to Walker's participation in the prior proceedings. The trial court reserved a ruling on Beecham's motion for a directed verdict and submitted the matter to the jury.

We agree with the trial court's ruling setting aside the verdict for the plaintiffs against Beecham for the reason that the evidence was insufficient as a matter of

[6] Prosser, *Law of Torts* (4th ed. 1971), pp. 857, 858, sec. 121.

[7] (1958), 4 Wis. 2d 432, 435, 436, 90 N. W. 2d 620.

[8] *Pimentel v. Houk* (1951), 101 Cal. App. 2d 884, 226 Pac. 2d 739; *Barnette v. Woody* (1955), 242 N. C. 424, 88 S. E. 2d 223; *Brown v. Robertson* (1950), 120 Ind. App. 434, 92 N. E. 2d 856; *Italian Star Line v. U. S. Shipping Board E. F. Corp.* (2d Cir. 1931), 53 Fed. 2d 359, 80 A. L. R. 576.

law to sustain a finding that Beecham had committed a willful act in the use of the process not proper in the regular conduct of the proceeding. The evidence merely showed the normal prosecution of a civil suit at the instance of Beecham, and the possible existence of an improper desire on Beecham's part to punish George Thompson for his testimony at the divorce hearing and Elizabeth Thompson for her public criticisms. But there is no evidence that Beecham actually misused the suit as a club to achieve his wrongful purpose. There is no evidence that Beecham ever acted in a manner inconsistent with the regular prosecution of an injunction suit.

Normally, this element of some definite act or threat consists of stating to the defendant in the prior suit that, unless he pays an alleged indebtedness or surrenders certain property, the plaintiff will prosecute the suit to completion. In this case no debt or property is involved, but this element could have been supplied by evidence that Beecham had threatened to continue the suit unless the Thompsons ceased their legitimate criticism of his ministry, or by evidence that he had stated that he was using the suit in order to embarrass and punish the Thompsons. But no such evidence exists in this record, and proof of the existence of an improper motive does not dispense with the necessity of proof of some definite act or threat not properly authorized by the process.

*By the Court.*—Judgment affirmed.