Gene W. Schmit, Rosemary T. Schmit, Fillmore E. Ott, Elizabeth Jane Ott, Richard E. Paulus and Joann V. Paulus, Plaintiffs-Appellants,

v.

Terry Klumpyan, Paula Klumpyan, Carla J. Schmit, Michael Schmit and Renee Schmit, Defendants-Respondents.

Court of Appeals

*No. 02–2387. Submitted on briefs February 19, 2003.—Decided April 16, 2003.*

2003 WI App 107

(Also reported in 663 N.W.2d 331.)

417

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Thad W. Jelinske* and *Seth P. Hartigan* of *Domnitz, Mawicke & Goisman, S.C.*, Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Thomas A. Merkle* and *Gregory W. Lyons* of *O'Neil, Cannon & Hollman, S.C.*, Milwaukee.

Before Brown, Anderson and Snyder, JJ.

¶ 1. ANDERSON, J.   This appeal requires us to consider whether sufficient evidence was presented to establish that the initiation and continuation of a partition action constituted an abuse of process. To prevail on an abuse of process claim, a party must present evidence that another party used the process in a manner not intended and to gain a collateral advantage. We reverse; the evidence presented in this case does not establish that the partition action was used for any purpose other than its intended purpose, the resolution of a dispute over real estate owned by multiple parties.

## Procedural Background

¶ 2.   Gene W. Schmit and Rosemary T. Schmit (Trustees of the Gene W. Schmit and Rosemary T. Schmit Revocable Trust), Fillmore E. Ott, Elizabeth Jane Ott, Richard E. Paulus and Joann V. Paulus (Schmit) are owners of a 75% interest in a 37–acre parcel of land located near the intersection of I-43 and State Trunk Highway 60 in the town of Grafton,

Ozaukee county. The remaining 25% interest is held by Terry Klumpyan, Paula Klumpyan, Carla J. Schmit, Michael Schmit and Renee Schmit (Klumpyan). Schmit and Klumpyan hold title to the parcel as tenants-in-common. Schmit received an Option to Purchase (Option) for the parcel from a developer identified as FRED-GRAFTON TWO, L.L.C., which Schmit was willing to accept but which Klumpyan refused to accept. Schmit brought a partition action under WIS. STAT. ch. 842 (2001–02)[1] seeking the sale of the property and distribution of the proceeds according to each party's ownership interest. Klumpyan responded with an answer and a counterclaim, alleging that the partition action constituted an abuse of process, "[t]he specific intended result of the instant action is not for partition, nor for judicial sale, but rather to threaten, harass, leverage, intimidate and force the Defendants into agreeing to and entering into the FRED option."

¶ 3. The abuse of process counterclaim was tried before the trial court, which found that the partition action was an abuse of process and that Klumpyan was entitled to damages equal to the attorney's fees and costs totaling $66,734.48. The trial court denied Schmit's motion for reconsideration and stayed execution of the judgment pending appeal. Schmit appeals both the finding that the partition action was an abuse of process and the award of attorney's fees. We will discuss the relevant facts and the trial court's decision after setting the stage with a discussion of the pertinent law.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

## STANDARD OF REVIEW

■

¶ 4.   In this appeal, Schmit challenges the trial court's conclusion that Klumpyan presented sufficient evidence to establish an abuse of process. The trial court's decision that Klumpyan met the burden of proof involves determinations of fact and law; we will divide the trial court's decision into factual findings and legal conclusions and apply a different standard of review to each division. *See Wassenaar v. Panos,* 111 Wis. 2d 518, 525, 331 N.W.2d 357 (1983). We will uphold the trial court's factual findings as long as they are not clearly erroneous. *Noll v. Dimiceli's, Inc.,* 115 Wis. 2d 641, 643, 340 N.W.2d 575 (Ct. App. 1983). It is because the trial court is in a better position to decide the weight and relevancy of the testimony and the credibility of the witnesses that an appellate court gives substantial deference to the trial court's findings of fact. *Allied Processors, Inc. v. W. Nat'l Mut. Ins. Co.,* 2001 WI App 129, ¶ 12, 246 Wis. 2d 579, 629 N.W.2d 329, *review denied,* 2001 WI 117, 247 Wis. 2d 1034, 635 N.W.2d 782 (Wis. Sept. 19, 2001) (No. 00–1490).

■

¶ 5.   In contrast, we do not accord the trial court deference when reviewing its conclusions of law because there is nothing intrinsic to its determination which gives the trial court any advantage over an appellate court. *State v. Panknin,* 217 Wis. 2d 200, 207, 579 N.W.2d 52 (Ct. App. 1998). Whether the evidence presented at trial is sufficient to support a cause of action for abuse of process is a question of law we will decide independently. *Pronger v. O'Dell,* 127 Wis. 2d 292, 297, 379 N.W.2d 330 (Ct. App. 1985). Given that Schmit limits the challenge to the trial court's conclu-

420

sion that the partition action was an abuse of process, we accept the trial court's factual findings and confine our independent review to the question of whether those facts constitute an abuse of process.

## ABUSE OF PROCESS

¶ 6.  The tort of abuse of process[2] is a vague, yet simple, concept. *See* 2 DAN B. DOBBS, THE LAW OF TORTS § 438 (2001). In *Brownsell v. Klawitter*, 102 Wis. 2d 108, 114, 306 N.W.2d 41 (1981), the Wisconsin Supreme Court reiterated Wisconsin's adoption of the general definition of the tort found in the RESTATEMENT (SECOND) OF TORTS § 682 (1977):

> One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process.

The essence of this cause of action is the misuse of the court's power, "usually to compel the victim to yield on some matter not involved in the suit." DOBBS, *supra,* at § 438.

¶ 7.  In Wisconsin, there are two elements of abuse of process. First, a "wilful act in the use of process not proper in the regular conduct of the proceedings."

---

[2] We have previously explained "process" as follows:

In its broadest sense, the term "process" comprehends all the acts *of the court* from the beginning of a proceeding to its end; in its narrower sense, it is the means of compelling the defendant to appear in court after the suing out of the original writ in a civil case and after indictment in a criminal case.

*Wells v. Waukesha County Marine Bank*, 135 Wis. 2d 519, 536–37, 401 N.W.2d 18 (Ct. App. 1986).

*Brownsell*, 102 Wis. 2d at 115. This element requires evidence of "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process . . . and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Thompson v. Beecham*, 72 Wis. 2d 356, 362, 241 N.W.2d 163 (1976). As the supreme court explained in *Thompson*:

> [T]he process must be used for something more than a proper use with a bad motive. The plaintiff must allege and prove that something was done under the process which was not warranted by its terms. The existence of an improper purpose alone is not enough, for this improper purpose must also culminate in an actual misuse of the process to obtain some ulterior advantage.

*Id.* at 363.

¶ 8.   The second element of abuse of process is a subsequent misuse of the process. *Id.* at 362. This element requires evidence of "coercion to obtain a collateral advantage, not properly involved in the proceeding itself," *id.*, or of use of the process "to effect an object not within the scope of the process," or of any other improper purpose. *Brownsell*, 102 Wis. 2d at 113 (citation omitted) (emphasis omitted).

¶ 9.   A key component of the second element is the requirement that the process be used to obtain a collateral advantage, an advantage that is "not a benefit to the suitor that the process was designed to secure." DOBBS, *supra,* at § 438. The attempt to obtain a collateral advantage is an important component because the

tort is characterized as an attempt to use process as a means of extortion. *See* RESTATEMENT (SECOND) OF TORTS § 682 cmt. b (1977). An early decision of the Wisconsin Supreme Court clarifies that the inquiry is "whether the process has been used to accomplish some unlawful end, or to compel the defendant to do some collateral thing which he would not legally be compelled to do." *Docter v. Riedel*, 96 Wis. 158, 161, 71 N.W. 119 (1897).

¶ 10. For example, in *Maniaci v. Marquette University*, 50 Wis. 2d 287, 300, 184 N.W.2d 168 (1971), the supreme court held that the filing of a petition for temporary detention under WIS. STAT. § 51.04(1) (1965–66) to detain an individual rather than to examine her mental health was the seeking of a collateral advantage. In *Thompson*, the supreme court pointed out that an instigator's use of process to silence legitimate criticism of his ministry or to embarrass and punish critics is a collateral advantage. *Thompson*, 72 Wis. 2d at 364. The use of a properly issued subpoena to prevent a witness from performing a public function is another example of collateral advantage. *Brownsell*, 102 Wis. 2d at 115.

¶ 11. The instigator's personal like or dislike of the target of the process is not relevant. A comment to the RESTATEMENT underscores that "there is no action for abuse of process when the process is used for the purpose for which it *is intended,* but there is an incidental motive of spite." RESTATEMENT (SECOND) OF TORTS § 682 cmt. b (1977) (emphasis added). As explained in the comment, "the entirely justified prosecution of another on a criminal charge, does not become abuse of process merely because the instigator dislikes the accused and enjoys doing him harm." *Id.* Likewise, where the process is used for a purpose for which it *was*

*not intended,* there is an action for abuse of process even if the instigator bears no malice or harbors no grudges against the target. *See Strid v. Converse,* 111 Wis. 2d 418, 426, 331 N.W.2d 350 (1983).

¶ 12.   Some jurisdictions follow a formulation that limits an abuse of process claim to a misuse of process after a lawsuit is filed. *See Moffett v. Commerce Trust Co.,* 283 S.W.2d 591, 599 (Mo. 1955). In those states, the filing of an action cannot be the trigger for an abuse of process action. Wisconsin follows a broader formulation under which either the commencement of a suit, *Maniaci,* 50 Wis. 2d at 300 (petition to detain individual rather than examine her mental health can constitute an abuse of process), or the misuse of process after the suit is started, *Brownsell,* 102 Wis. 2d at 115 (proper issuance of a subpoena to prevent a witness from performing a public duty), can serve as the trigger for an abuse of process claim.[3] *See* DOBBS, *supra,* at § 438.

---

[3] In concluding that initiation of an action could be enough to support an abuse of process claim, the Iowa Supreme Court explained:

> The existence of [the abuse of process] cause of action recognizes that even in meritorious cases legal process may be abused. That abuse involves using the process to secure a purpose for which it is not intended. We can see no reason why there must be a subsequent activity to support the cause of action. Such activity may be very probative in determining the intent to abuse; however, there need not be such a subsequent action to commit the tort. To rule otherwise would protect the tortfeasor when the abuse is most effective—where the issuance of the process is sufficient to accomplish the collateral purpose.

*Mills County State Bank v. Roure,* 291 N.W.2d 1, 5 (Iowa 1980).

¶ 13. As we begin our consideration of whether the evidence Klumpyan presented was sufficient to establish an abuse of process, we must keep in mind that public policy guarantees citizens access to the courts. *See Penterman v. Wis. Elec. Power Co.*, 211 Wis. 2d 458, 474, 565 N.W.2d 521 (1997) (citizens' right to judicial access must be "adequate, effective, and meaningful"). Because of its potential chilling effect on the right of access to the courts, the tort of abuse of process is disfavored and must be narrowly construed to insure the individual a fair opportunity to present his or her claim. *DeVaney v. Thriftway Mktg. Corp.*, 953 P.2d 277, 284 (N.M. 1997).

## DISCUSSION

¶ 14. The Option acknowledged the fractured ownership interests in the parcel and required Schmit to obtain, within thirty days, either an undivided 100% interest in the parcel or the voluntary consent of Klumpyan to the sale of the parcel under the terms of the Option. The Option also provided that if Schmit failed to secure the consent of Klumpyan:

> Seller agrees to immediately thereafter commence a partition action under Wisconsin law and thereafter diligently and in good faith prosecute such action to completion so as to allow Buyer to obtain 100% fee title to the Property in accordance with and on the terms and conditions of this Option.

Less than thirty days after receiving the Option, Schmit filed the partition action. The complaint set forth the ownership interests of all parties, that an Option had been received, that Schmit wished to accept but Klumpyan refused to accept, and that a physical divi-

425

sion of the parcel would reduce the value of the various ownership interests. In the complaint, Schmit sought the "sale of the Property pursuant to the provisions of Chapter 842 Wis. Stats. and that the proceeds of this sale be bought into Court and divided among the parties according to their respective rights and interests."

¶ 15.   Klumpyan responded with a counterclaim that alleged the partition action was an abuse of process. In the trial court, the hub of Klumpyan's theory centered on the Option and the requirement that Schmit commence a partition action if Klumpyan refused to accept the Option. While Klumpyan acknowledged that "a partition action is one way to resolve disputes over land," he argued that Schmit's partition action was an abuse of process because the Option obligated Schmit to commence the action. "[T]his action was brought solely to force the defendants into selling the property at plaintiff's price, to transfer title, 'in accordance with and on the terms and conditions of this Option.' "

¶ 16.   After brief testimony from two of the principals and the attorney for Schmit who negotiated the Option, the trial court agreed with Klumpyan's theory. In its bench decision, the trial court commented that "from the perspective of the defendant's viewpoint" it was the Option which "triggered the lawsuit." The court held that "it was the intent of the buyer's [sic] to use the Option of partition as leverage to obtain something which partition doesn't provide; and that is, 100 percent title in order to permit the plaintiff to sell it." In determining that the partition action was an abuse of process the court reasoned:

> The law really provides no guidance, except in the phrase when it says *"primarily for a purpose for which it was not designed."* And that's where this case hangs.

I have to decide whether the intent of these plaintiffs to trigger partition primarily to force, to allow them to deliver the goods in this Option; or in frustration casting their hands in the air and force Sheriff's Sale. And I think from all the [sic] I've heard today, and from the way the case has been handled, it appears to me that the defense has met their burden.

And I believe that, as I did this morning, that this process was used and intended for a purpose for which it was not designed; and that was to lever the defense so that this Option could be honored; so that it could, so that to allow the buyer to obtain 100 percent fee title to the property in accordance with the terms and conditions of this Option.

It is something that the sellers, the 75 percent sellers, could not guarantee, could not assure; yet they contractually bound themselves to do it. And they brought this lawsuit for that purpose; and that purpose is not a purpose for which it was intended. (Emphasis added.)

¶ 17. Schmit pursued a motion to reconsider in which he first argued that because a court has equitable powers when it is ruling in a partition action, the court is not bound to any specific remedy and could have found the terms and conditions of the Option equitable and granted that remedy. Schmit argued there was no abuse of process because a sale according to the terms and conditions of the Option was a legitimate objective of the partition action. The second argument advanced in the motion to reconsider was that Klumpyan failed to prove any definitive act after the action was commenced that was an abuse of process.

¶ 18. Not persuaded by Schmit's arguments, the trial court denied the motion to reconsider:

So the way I read that is the *subsequent misuse of process has to be something subsequent to the motive,* to the Court's determination of that motive.

427

> Now motive is crystal clear here . . . . [T]he majority owners of the property . . . believed sincerely that this was the best deal; and believed that the minority owners . . . didn't know any better and were obstructing a good deal. And this group used their ability and their skill and their enterprise to leverage [the minority owners] into doing it [the majority's] way.
>
> . . . .
>
> But what occurred here was the motive to enforce the Option; and the subsequent misuse of the process was the very way everything was executed . . . . The lawsuit itself was structured in such a fashion that even during it's process parties were advancing various arguments. That there may be other equities involved; there may be other issues involved. Even in the process of the case the Court was being pushed in ways which would have advanced the Option. (Emphasis added.)

¶ 19.  The trial court stressed that Schmit's intent, motive and practice was to coerce Klumpyan into accepting the Option. The court stated that all of Schmit's actions, from preparing the Option to executing the Option to commencing the partition action, were taken to coerce Klumpyan into acquiescing to the terms of the Option. The court concluded that the coercion employed by Schmit was to gain the collateral advantage of having Klumpyan accept the Option.

¶ 20.  We are bound by the trial court's factual finding that Schmit's motive in commencing the partition action "was to lever the defense so that this Option could be honored." *See Noll*, 115 Wis. 2d at 643. Nevertheless, we conclude that Schmit's motive for filing and maintaining the partition action does not amount to an abuse of process. *See Pronger*, 127 Wis. 2d

at 297. We reach this conclusion because Schmit used the partition action for the purpose for which it was designed.

¶ 21.   The trial court erred in its decision when it stated:

> The law really provides no guidance, except in the phrase when it says *"primarily for a purpose for which it was not designed."* And that's where this case hangs. I have to decide whether the intent of these plaintiffs to trigger partition primarily to force, to allow them to deliver the goods in this Option; or in frustration casting their hands in the air and force Sheriff's Sale. (Emphasis added.)

As explained by the RESTATEMENT, the significance of the phrase, *primarily for a purpose for which it was not designed,* "is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to [Schmit]." *See* RESTATEMENT (SECOND) OF TORTS § 682 cmt. b (1977).

> [N]o right of action exists for damages resulting from the institution and prosecution of a civil action if the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint, even if the plaintiff had an ulterior motive in bringing the action . . . .

1 AM. JUR. 2D *Abuse of Process* § 11 (1994).

¶ 22.   A partition action is a remedy under both the statutes and common law that applies to all disputes over property held by more than one party. *Watts v. Watts*, 137 Wis. 2d 506, 535, 405 N.W.2d 303 (1987). Partition is an equitable proceeding; a court of equity seeks to do justice between the parties, *Jezo v. Jezo*, 23

429

Wis. 2d 399, 404, 127 N.W.2d 246 (1964), and the trial court is not restricted to the statutory remedies— partition along undisputed lines or partition by sheriff's sale—but it is within the discretion of the trial court to order any remedy, including a private sale by the parties, that is equitable. *See Heyse v. Heyse*, 47 Wis. 2d 27, 37, 176 N.W.2d 316 (1970).

¶ 23.  The trial court found that Schmit's ulterior motive in bringing the partition action was to force Klumpyan to accept the terms and conditions of the Option. As the RESTATEMENT explains, Schmit's motive is not controlling. Granted, Schmit's desire to accept the Option is the ulterior motive that triggered the commencement of the partition action, but it cannot serve as the basis of a cause of action for abuse of process because the sole purpose of a partition is to resolve disputes over property held by multiple parties. *Watts*, 137 Wis. 2d at 535. As majority owner, Schmit was stymied by Klumpyan's refusal to sell the property; the only alternative he had was to commence a partition action to force either a physical division of the property or a sale of the property.[4]

¶ 24.  The trial court also erred in holding, "the subsequent misuse of process has to be something subsequent to the motive." The court erred because Schmit's motive is not relevant; therefore, how the process is used after Schmit's motive became apparent

---

[4] Public policy requires that we narrowly construe the abuse of process cause of action when it is applied to a partition action that is intended to resolve disputes over real estate, such as whether or not to sell. If we were to affirm the concept that Schmit's motive to sell the parcel is a perversion of a partition action and is an abuse of process, we would be permitting co-owners, unwilling to sell, to hold a parcel hostage and coerce co-owners, willing to sell.

is not significant to the existence of the cause of action. The requirement of "a subsequent misuse of the process," *Thompson*, 72 Wis. 2d at 362, is referring to a perversion of process after the commencement of a lawsuit; for example, threatening to continue the lawsuit solely to embarrass and harass the other party. *See id.* at 364.

¶ 25.  Missing in this case is any evidence that Schmit used the partition action to gain a collateral advantage—the second element of the cause of action—to seek to force Klumpyan to do some collateral thing that Schmit could not legally compel Klumpyan to do. *See Docter*, 96 Wis. at 161. There is no evidence that Schmit used the partition action to extort or put pressure on Klumpyan to achieve a goal other than the sale of the property, a legitimate goal of a partition action. "For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended. The usual case of abuse of process is one of some form of extortion . . . ." RESTATEMENT (SECOND) OF TORTS § 682 cmt. b (1977). There is a failure of proof that "something was done under the process which was not warranted by its terms." *Thompson*, 72 Wis. 2d at 363.

¶ 26.  The equitable nature of a partition action gives the trial court the discretion to fashion a remedy that meets the needs of the specific case. *See Mulder v. Mittelstadt*, 120 Wis. 2d 103, 115, 352 N.W.2d 223 (Ct. App. 1984). Equity does not limit the trial court to the statutory partition remedies found in Wis. STAT. § 842.02(2). The power of the court to "enlarge the scope of the ordinary forms of relief, and even to contrive new ones adapted to new circumstances"

makes it possible that in its discretion the trial court could have ordered a sale tracking the terms and conditions of the Option. *Mulder*, 120 Wis. 2d at 115. That the terms and conditions of the Option were "in play" establishes that Schmit was seeking a remedy the process was intended to secure and not a collateral advantage or an unlawful result.

## Conclusion

¶ 27. Klumpyan failed to present sufficient evidence to support the claim that Schmit's partition action constituted an abuse of process. Although Klumpyan established that the Option provided the impetus for Schmit to commence the partition action, Schmit did not initiate the partition action nor did he improperly use process to coerce Klumpyan to provide a benefit Schmit was not entitled to in the partition action. Therefore, we reverse the judgment of the trial court finding that Schmit's partition action was an abuse of process and awarding damages to Klumpyan.[5]

*By the Court.*—Judgment reversed.

[5] Because we conclude that the trial court erred in holding that Klumpyan presented sufficient evidence to establish that Schmit's partition action was an abuse of process, Klumpyan is not entitled to damages and we need not consider Schmit's challenge to the trial court's calculation of damages.